1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BERNARD GRAY,<br><br>Plaintiff,<br><br>v.<br><br>JOHNATHAN MARTIN, et al.,<br><br>Defendants. | Case No. 1:25-cv-00594-SAB<br><br>ORDER OF REASSIGNMENT OF THIS MATTER TO A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION |

On May 20, 2025, Plaintiff, who is proceeding *pro se* and *in forma pauperis*, commenced this action. (ECF No. 1.) On June 6, 2025, the Court screened the complaint and found that it failed to state a claim. (ECF No. 4.) The Court gave Plaintiff 30 days to file an amended complaint in order to address the pleading deficiencies. (Id.) On June 16, 2025, Plaintiff timely filed a first amended complaint (ECF No. 5), and on July 17, 2025, the Court undertook the screening of that complaint. (ECF No. 6.) Again, the Court found that Plaintiff had failed to state a claim, but given the allegations raised, the Court determined to give Plaintiff leave to amend. (Id.) On August 15, 2025, Plaintiff filed a second amended complaint, and later a motion for an extension of time. (ECF Nos. 7, 8.) Because Plaintiff had already timely filed his second amended complaint, the Court denied the motion for an extension as moot. (ECF No. 9.) On October 8, 2025, the Court screened the second amended complaint and found that Plaintiff had again failed to state a claim. (ECF No. 10.) Given that it appeared that Plaintiff was

potentially close to shoring up his claims, the Court gave Plaintiff one final time to file an amended complaint.  (Id.)  However, the time how now passed for plaintiff to file a third amended complaint, and Plaintiff has failed to do so.  Therefore, the Court will reassign this matter to a district judge and recommend that this matter be dismissed for failure to state a claim and failure to prosecute.

This matter was assigned pursuant to Local Rule, Appendix A(k)(1).  Therefore, this action has been directly assigned to a Magistrate Judge only.  Not all parties have appeared or filed consent or declination of consent forms in this action.  Pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c)(17), and Local Rule Appendix A, subsection (k), the Court will direct the Clerk of the Court to randomly assign a district judge to this action and the Court shall issue findings and recommendations.

**I.**

**SCREENING REQUIREMENT**

The *in forma pauperis* statute provides that a court shall dismiss a case if, *inter alia*, the complaint is "frivolous or malicious," or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).  In determining whether a complaint fails to state a claim, a court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

1    Moreover, federal courts are under a duty to raise and decide issues of subject matter
2  jurisdiction *sua sponte* at any time it appears subject matter jurisdiction may be lacking.  Fed. R.
3  Civ. P. 12; Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).  If the Court
4  determines that subject matter jurisdiction is lacking, the Court must dismiss the case.  Id.; Fed. R.
5  Civ. P. 12(h)(3).  Leave to amend may be granted to the extent that the deficiencies of the
6  complaint can be cured by amendment.  Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

7                                                   **II.**

8                                    **COMPLAINT ALLEGATIONS**

9    The Court accepts Plaintiff's allegations in his second amended complaint as true for the
10  purpose of this *sua sponte* screening requirement under 28 U.S.C. § 1915.

11    In his civil complaint form, Plaintiff lists the basis of subject-matter jurisdiction as federal
12  question jurisdiction and lists the following statutes: 42 U.S.C. § 1983; 18 U.S.C. § 1801 – video
13  voyeurism prevention act of 2004; [42] U.S.C. § 18912; Sections, 5, 7, & 21 of the California
14  "Unruh Civil Rights Act"; 18 U.S.C. § 1374.  (ECF No. 7, pp. 4-5.)  For his statement of his claim,
15  Plaintiff alleges "daily harassment. Watched & followed by drones.  Breaking & entering into my
16  home.  Deed fraud.  Trying to have me deemed crazy.  Missing & destroying my property.
17  $800,000 for six years of mental distress."  (Id. at p. 6) (sic).  Specifically, for damages Plaintiff
18  lists: "vandalism to my truck $9,800; stucco damage to the surface wall of my home $15,000;
19  stealing money from bank account and bank checks $68,000; stole $43,000 when I was in prison.
20  (Id. at p. 7.)

21    Attached to the complaint, Plaintiff has included a letter wherein he gives more details to
22  his claims, which the Court incorporates.  Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1160
23  (9th Cir. 2012).  Plaintiff begins by stating that the defendants discussed are in cahoots based on
24  the fact that Plaintiff has "two prior strikes from a case back in 1999.  And because I'm black,
25  retired, and own my own home."  (Id. at p. 8.)  Plaintiff alleges that the defendants have access to
26  his bank account, his SSA, and Cash App account.  (Id.)  The defendants can also "monitor who I
27  call, text, and have some type of jamming device where they control who I can call or call me."
28  (Id.)  Plaintiff states that he has surveillance audio and video footage evidence.  (Id.)  Plaintiff then

1   asserts that "But still more importantly the main reason is because of the lawsuit against [Fresno
2   Police Department] as of result of their actions of continued hate crimes and lies against me
3   without anyone being reprimanded." (<u>Id.</u>) Plaintiff alleges that "everyone" hangs out at the home
4   of Johnathan Martin and Joanne Martin and consistently fly drones that monitor Plaintiff. (<u>Id.</u>)
5   Plaintiff also alleges that "[t]hey have cameras inside my house and frequently disturb me with
6   intrusive conversations about my activities, which is causing [sic] to me." (<u>Id.</u>)

7       Plaintiff then individually lists the remaining defendants, which separate allegations for
8   each. Plaintiff alleges that Roxanne Miranda asked Plaintiff about sensitive information, including
9   about Plaintiff's sealed military records. (<u>Id.</u> at p. 8.) Miranda logged into Plaintiff's Keystone
10  account and asked Plaintiff how much his precious metals investment was worth. (<u>Id.</u>) Miranda
11  worked for the IRS and know how to access and investigate private affairs. (<u>Id.</u>)

12      Next, Plaintiff discusses Raavy Kaur, one of the individuals who was part of a scheme to
13  steal the deed to Plaintiff's home by transferring the home into someone else's name. (<u>Id.</u> at p. 9.)
14  Plaintiff has evidence where the deed was altered, and Plaintiff tried showing it to a finance
15  company. (<u>Id.</u>) "Unfortunately, [the deed] ran into the problem of switching ownership because
16  of my late wife and I had placed our home under a Revokable Trust under her name." (<u>Id.</u>)
17  Plaintiff asserts that Kaur participated in daily harassment. (<u>Id.</u>)

18      For Joanne Martin, Plaintiff alleges that she defamed his character by teaching others that
19  Plaintiff is crazy, "hallucinating, and a drug addict whenever they would randomly call 911 on me
20  saying I was carrying firearms and weapons." (<u>Id.</u>) Plaintiff states that Joanne spoke to Plaintiff
21  "as if she was a Federal Judge quite a few times." (<u>Id.</u>) Plaintiff alleges that Joanne gave bottles
22  of gabapentin to the group members and that this was supposed to be administered to Plaintiff,
23  "and not knowing what they may contain I looked under pill identifier "G 21" not identifiable, and
24  so I kept the bottle of gabapentin to take into evidence." (<u>Id.</u>) Plaintiff states that Joanne, using
25  her nursing license, called the VA hospital when he had been taken there two time to the "PAC"
26  unit. (<u>Id.</u>)

27      Plaintiff alleges that Sharam Bahrami, MD, asks for Plaintiff's urinalysis test results "when
28  she was not on the clock at Fresno County Jail." (<u>Id.</u>)

For "Ray," Plaintiff alleges that he "was always calling me when I called FPD asking to speak with a [Seargent] when I was reporting a crime after I would hang up, he would call about 30 mins. To a hour later impersonating to be an Federal Agent telling me these are not crimes, do not call unless I have real evidence or I'll be arrested. Always same voice just different last names." (Id. at p. 10.) (sic).

Next, Plaintiff discusses Johnathan Martin, who Plaintiff states is an "evil, and hate filled man with serious issues. He will lie to you and act like other people impersonate the federal law enforcement agency makes false implications, knows how to commit fraud and debit and credit cards, bank accounts, knows how to control who a person can call or receive calls from, invasion of privacy and voyeurism with drone, an dhas the knowledge to link other residence to your PG&E energy bill." (Id.) Plaintiff alleges Johnathan "is addicted to fentanyl and his fraud activity is how he supports his addiction and conveniences. he will harass and prove you then call 911 and act scared weak and fearing for his life but he's evil mean controlling abusive." (Id.) (sic)

Regarding Mary Gonzalez, Plaintiff states "invasion of privacy voyeurism and defamation of character by claiming to others that I'm addicted to crack cocaine, crystal meth." (Id. at p. 11.)

Finally, Plaintiff discusses "Mike," who is "the one who knows and is the brains of all technology tapping into my phones and computer, burned my phones 3ea. Breaking and entering into my home to steal evidence, install camara in my home invasion of privacy, tapping into my surveillance system. (Id.)

Plaintiff closes with a handwritten statement: "I am tired of hearing there's no way he can prove this By all of the …" (Id.) The page cuts off.

### III.

### DISCUSSION

While Plaintiff has included more information in his second amended complaint, including one potential cause of action, it does not appear that Plaintiff has alleged a federal cause of action.

Federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Federal courts can adjudicate only cases that the Constitution or Congress authorize them to adjudicate: those cases involving diversity of

1  citizenship (where the parties are from diverse states), or a federal question, or those cases to

2  which the United States is a party. See id. Federal courts are presumptively without jurisdiction

3  over civil cases and the burden of establishing the contrary rests upon the party asserting

4  jurisdiction. Id. at 377.

5      From the second amended complaint, it appears that the only basis for subject-matter

6  jurisdiction is federal question jurisdiction, which in turn requires Plaintiff to identify a cause of

7  action that implicates the federal constitution, treaties, statutes, or other federal law. However, as

8  discussed in the Court's previous screening order, (ECF No. 6), the majority of Plaintiff's

9  allegations center around invasion of privacy and fraud, both of which are appeared to be state law

10 claims and cannot form the basis for federal question jurisdiction. See Hill v. National Collegiate

11 Athletic Assn., 7 Cal. 4th 1, 24, 865 P.2d 633 (Cal. 1994) (discussing four theories of liability for

12 invasion of privacy tort); Lazar v. Superior Court, 12 Cal.4th 631, 638, 909 P.2d 981 (Cal. 1996)

13 (discussing the elements of fraud under California law).

14     Here, Plaintiff now relies on the Fourth Amendment brought through 42 U.S.C. § 1983.

15 For Plaintiffs, benefit, the Court will give Plaintiff the legal standard for a Fourth Amendment

16 privacy right violation and explain how his current pleading is deficient.

17     "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

18 the Constitution and laws of the United States, and must show that the alleged deprivation was

19 committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

20 The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses,

21 papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As

22 relevant here, under this doctrine, only a government actor may be held liable for an alleged

23 privacy invasion, not a private actor. Id.; Wolf v. People of the State of Colo., 338 U.S. 25, 27-28

24 (1949) (incorporating Fourth Amendment through the Fourteenth Amendment). Indeed, the "basic

25 purpose of this Amendment . . . is to safeguard the privacy and security of individuals against

26 arbitrary invasions by *governmental officials*." Carpenter v. United States, 585 U.S. 296, 303

27 (2018) (emphasis added) (internal quotation marks and citations omitted). Furthermore, because

28 "the Fourth Amendment protects people, not places," when an individual "seeks to preserve

6

1   something as private, and his expectation of privacy is one that society is prepared to recognize as

2   reasonable."  The Court observers that generally this type of claim results following an unlawful

3   search by a governmental official, assuming no exception applies.

4       Significantly, Plaintiff has provided no allegations regarding a state actor.  Though there

5   are allegations that "Ray" called Plaintiff after Plaintiff called the Fresno Police Department, there

6   are no allegations that Ray was a governmental official or that Ray had anything to do with an

7   unlawful search.   For these reasons, Plaintiff has failed to state a claim under the Fourth

8   Amendment.

9       Regarding, 18 U.S.C. § 1801, the Court observes that this is a criminal statute and does not

10  appear to provide a private right of action.  Thus, § 1801 is not an appropriate basis for a claim in a

11  civil lawsuit.  Similarly, 18 U.S.C. § 1347 is a criminal statute pertaining to healthcare fraud and

12  does not appear to provide for a private right of action.  Therefore, § 1347 too is not an appropriate

13  basis for a claim in a civil lawsuit.

14      Finally, 42 U.S.C. § 18912 concerns federal research security and does not appear to

15  provide a private right of action or to be relevant to any of the allegations.  Again, this statute

16  cannot not form the basis of a civil claim.

17      Because Plaintiff has not alleged facts that implicate a federal cause of action, the Court

18  finds that Plaintiff has not met his burden of demonstrating that this Court has subject-matter

19  jurisdiction over his case.  And for that reason, the Court will not go into an analysis of whether

20  Plaintiff has sufficiently pleaded claims under California law.  In light of the foregoing, the Court

21  will recommend that this matter be dismissed.

22                                    **IV.**

23                          **FAILURE TO PROSECUTE**

24      Federal Rule of Civil Procedure 41(b) permits courts to involuntarily dismiss an action

25  when a litigant fails to prosecute an action or fails to comply with a court order.  See Fed. R. Civ.

26  P. 41(b); see also Applied Underwriters v. Lichtenegger, 913 F.3d 884, 889 (9th Cir. 2019)

27  (citations omitted); Hells Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir.

28  2005) ("[T]he consensus among our sister circuits, with which we agree, is that courts may

1  dismiss under Rule 41(b) sua sponte, at least under certain circumstances.").  Similarly, Local

2  Rule 110 permits courts to impose sanctions on a party who fails to comply with a court order,

3  and the procedural rules that govern this Court are to be "construed, administered and employed

4  by the court . . . to secure the just, speedy, and inexpensive determination of every action and

5  proceeding." Fed. R. Civ. P. 1.

6        Before dismissing an action under Fed. R. Civ. P. 41, a court must consider: (1) the

7  public interest in expeditious resolution of litigation; (2) the Court's need to manage a docket;

8  (3) the risk of prejudice to defendant; (4) public policy favoring disposition on the merits; and (5)

9  the availability of less drastic sanctions.  See Applied Underwriters, 913 F.3d at 890 (noting that

10  these five factors "must be considered" before a Rule 41 involuntarily dismissal); Malone v. U.S.

11  Postal Service, 833 F.2d 128, 130-31 (9th Cir. 1987) (reviewing the five factors and

12  independently reviewing the record because the district court did not make finding as to each).

13  But see Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000) (listing the same but

14  noting the court need not make explicit findings as to each); Ferdik v. Bonzelet, 963 F.2d 1258,

15  1260-61 (9th Cir. 1992) (affirming dismissal of *pro se* § 1983 action when plaintiff did not

16  amend caption to remove "et al." as the court directed and reiterating that an explicit finding of

17  each factor is not required by the district court).

18        Upon review of the above-stated factors, the Court finds dismissal of the action is

19  warranted.  The expeditious resolution of litigation is deemed to be in the public interest.

20  Yourish v. California Amplifier, 191 F.3d 983, 990-91 (9th Cir. 1999).  Turning to the second

21  factor, the Court's need to efficiently manage its docket cannot be overstated.  Given Plaintiff

22  has failed to respond to the Court's October 8, 2025 order, the Court's time is better spent on

23  other matters than needlessly consumed managing a case with a recalcitrant litigant.  Indeed,

24  "trial courts do not have time to waste on multiple failures by aspiring litigants to follow the

25  rules and requirements of our courts." Pagtalunan v. Galaza, 291 F.3d 639, 644 (9th Cir. 2002)

26  (Trott, J., concurring in affirmance of district court's involuntary dismissal with prejudice of

27  habeas petition where the petitioner failed to timely respond to court order, noting "the weight of

28  the docket-managing factor depends upon the size and load of the docket, and those in the best

position to know what that is are our beleaguered trial judges"). Delays have the inevitable and inherent risk that evidence will become stale or witnesses' memories will fade or be unavailable and can prejudice a defendant, thereby satisfying the third factor. See Sibron v. New York, 392 U.S. 40, 57 (1968). The instant dismissal is a dismissal without prejudice, which addresses the fifth factor.

This case cannot linger indefinitely on this Court's already overburdened docket. A dismissal of this action for failure to prosecute and failure to comply with court orders is in accord with Ninth Circuit precedent as well precedent governing Rule 41 dismissals. It appears Plaintiff has abandoned this action, and Plaintiff's failure to respond to the Court's order warrants the sanction of dismissal without prejudice under the circumstances.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**ORDER AND RECOMMENDATION**

IT IS HEREBY ORDERED that the Clerk of the Court is DIRECTED to randomly assign this matter to district judge.

FURTHERMORE, IT IS HEREBY RECOMMENDED that this case be dismissed without prejudice for failure to state a claim, failure to prosecute this action and/or failure to comply with the Court's order, pursuant to Fed. R. Civ. P. 41 and Local Rule 110.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 19, 2025**

_____
STANLEY A. BOONE
United States Magistrate Judge

10